# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### BALTIMORE DIVISION

CITI TRENDS, INC., et al.,

       Plaintiffs,

   vs.

COACH, INC., et al.,

       Defendants.

Case No. 1:17-cv-01763-RDB

## DEFENDANTS COACH, INC. AND COACH SERVICES, INC.'S
## MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Coach, Inc. and Coach Services, Inc. ("Defendants" or "Coach") respectfully submit the following memorandum in support of their motion to dismiss the Complaint filed by Plaintiffs Citi Trends, Inc. and Kelly Martin.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

6658816

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ............................................................................................1

II.   LEGAL STANDARDS ....................................................................................5

      A.    Subject Matter Jurisdiction Under The Declaratory Judgment Act Depends
            Upon The Existence, At The Time Of Filing, Of An Actual Controversy .............5

      B.    This Court Has Discretion To Decline Subject Matter Jurisdiction Under
            The Declaratory Judgment Act .............................................................6

      C.    A Complainant Must Directly And Explicitly Incorporate By Reference..............7

III.  FACTS ......................................................................................................10

      A.    Coach Has Never Asserted Any Claims Against Plaintiffs Regarding The
            20,657 Sold Goods ...............................................................................10

      B.    The Maryland Complaint Does Not Assert Claims Regarding The Seized
            Goods .............................................................................................12

      C.    The Maryland Complaint Does Not Incorporate By Reference The
            Operative Paragraphs Of Coach's California Complaint Concerning The
            Seized Goods ....................................................................................15

      D.    Communications From Citi Trends' Counsel Confirm That The Maryland
            Complaint Does Not Assert Claims Regarding The Seized Goods.......................17

      E.    The Maryland Case Is An Anticipatory, Forum-Shopping Lawsuit Filed In
            Secret Simply To Avoid Litigation In Coach's Chosen Forum...........................18

IV.   ARGUMENT ...............................................................................................21

      A.    The Court Lacks Subject Matter Jurisdiction Over This Case. ...........................21

      B.    Even If The Court Determines That Subject Matter Jurisdiction Exists,
            The Court Should Decline To Hear This Preemptive, Anticipatory Suit. ............21

V.    CONCLUSION.............................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1–800–Flowers.com, Inc. v. Edible Arrangements, LLC*,
  905 F. Supp. 2d 451 (E.D.N.Y. 2012) .......................................................................6

*Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*,
  139 F. 3d 419 (4th Cir. 1998) ...................................................................5, 7, 22

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937)....................................................................................5, 6, 21

*Aktiebolaget Stille-Werner v. Stille-Scanlan*,
  1 F.R.D. 395 (S.D.N.Y. 1940) ...................................................................................8

*Applera Corp. v. Michigan Diagnostics, LLC*,
  594 F. Supp. 2d 150 (D. Mass. 2009) .......................................................................6

*Arce v. Walker*,
  139 F. 3d 329 (2d Cir. 1998)......................................................................................8

*Casualty Indemnity Exchange v. High Croft Enterprises, Inc.*,
  714 F. Supp. 1190 (S.D. Fla. 1989) .......................................................................23

*Chesebrough–Pond's, Inc. v. Faberge, Inc.*,
  666 F. 2d 393 (9th Cir. 1982) ...................................................................................6

*Clark Constr. Group, Inc. v. Modern Mosaic*,
  2000 WL 34458952 (D. Md. December 1, 2000)......................................................8

*Davis v. Bifani*,
  2007 WL 1216518 (D. Colo. April 24, 2007)...........................................................9

*Demarco v. Depotech Corporation*,
  149 F. Supp. 2d 1212 (S.D. Cal. 2001)....................................................................8

*General Acc. Ins. Co. of America v. Fidelity and Deposit Company of Maryland v.
  First Jersey National Bank*,
  598 F. Supp. 1223 (E.D. Pa. 1984) ......................................................................7, 9

*Great American Ins. Co. v. Houston General Ins. Co.*,
  735 F. Supp. 581 (S.D.N.Y. 1990) ........................................................................23

*Heintz & Co. v. Provident Tradesmen Bank and Trust Company*,
  29 F.R.D. 144 (E.D. Pa. 1961)...............................................................................10

*Hogs and Heroes Foundation, Inc. v. Heroes, Inc.*,
  202 F. Supp. 3d 490 (D. Md. 2016) ............................................................7, 22, 23

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
  599 F. 3d 1377 (Fed. Cir. 2010) ................................................................................6

*Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*,
  619 F. Supp. 998 (D. Md. 1985) ................................................................................6

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*,
  312 U.S. 270 (1941) ..................................................................................................5

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ..........................................................................................5, 6, 21

*Micron Tech. Inc. v. MOSAID Techs., Inc.*,
  518 F. 3d 897 (Fed. Cir. 2008) .............................................................................7, 21

*Murphy v. Cadillac Rubber & Plastics, Inc.*,
  946 F. Supp. 1108 (W.D.N.Y. 1996) .........................................................................8

*Superguide Corp. v. Kegan*,
  987 F. Supp. 481 (W.D.N.C. 1997) ...........................................................................6

*United States v. International Longshoremen's Association*,
  518 F. Supp. 2d 422 (E.D.N.Y. 2007) .....................................................................8, 9

*World Religious Relief v. Gospel Music Channel*,
  563 F. Supp. 2d 714 (E.D. Mich. 2008) ....................................................................6

**Statutes and Rules**

15 U.S.C. § 1117(c) .......................................................................................................4

28 U.S.C. § 2201(a) .......................................................................................................5

28 U.S.C. §§ 2201 *et. seq* ..................................................................................... *passim*

Fed. R. Civ. P. 8(a)(2) ...................................................................................................9

Fed. R. Civ. P. 10(c) ..................................................................................................7, 8

Fed. R. Evid. 408 .........................................................................................................20

**Other Authorities**

Black's Law Dictionary 801, 1612 (6th ed. 1990).......................................................8

5A Wright & Miller, *Federal Practice & Procedure: Civil 3d* § 1326 .........................8

## I.    __INTRODUCTION__

Defendants Coach, Inc. and Coach Services, Inc. (collectively, "Coach")[1] seek dismissal of this declaratory judgment action (the "Maryland Case") for two reasons: (1) there is not now, and has never been, an actual controversy between Coach and Plaintiffs Citi Trends, Inc. ("Citi Trends") and Kelly Martin ("Martin") (collectively, "Plaintiffs") necessary to provide this Court with subject matter jurisdiction to hear the claims asserted in the Maryland Case under the Declaratory Judgment Act (the "Act"), 28 U.S.C. §§ 2201 *et. seq.*; and (2) even if subject matter jurisdiction existed, the Court should exercise its discretion under the Act to dismiss the Maryland Case because it was preemptively filed solely to deprive Coach of its preferred forum of the Central District of California to hear the only actual controversy that exists between the parties.[2]

The Maryland Case concerns 20,657 handbags that were imported from China and sold into commerce by Plaintiffs, and which Plaintiffs *alone* allege are the subject of an actual trademark-infringement controversy with Coach.  Coach has never claimed or asserted to Plaintiffs that any of these 20,657 handbags (the "Sold Goods") infringes any trademark owned by Coach.  There simply is not, and has never been, an actual controversy between the parties concerning the Sold Goods.

On the other hand, Coach has asserted in the California Case trademark-infringement claims against Plaintiffs concerning a shipment of 800 handbags, and a second shipment of 600

---

[1] Effective October 31, 2017, Coach, Inc. formally changed its name to Tapestry, Inc.  Only the name changed.  The corporate structure, EIN and corporate attributes remained the same.  In addition, effective October 3, 2017, the intellectual property previously held by Coach Services, Inc. was transferred to a new holding company, Coach IP Holdings, LLC.

[2] *See Coach, Inc. et al. v. Citi Trends, et al.*, Case No. 2:17-cv-04775-DMG-KS, filed in the United States District Court for the Central District of California (the "California Case").

wallets, purchased and imported by Plaintiffs, but seized in the Port of Long Beach by the United States Bureau of Customs & Border Protection ("CBP") because they were counterfeit (the "Seized Goods"). Coach first asserted these infringement claims in an April 25, 2017 letter to Citi Trends, which enclosed a draft copy of Coach's California Complaint. Coach requested an informal resolution with Citi Trends regarding the Seized Goods.

In response, Citi Trends produced a small number of records related to the 20,657 Sold Goods, but no records that appeared to be related to the Seized Goods. The records produced by Citi Trends were effectively useless and did not provide any basis upon Coach could claim that any of the Sold Goods infringed any of Coach's trademarks. Frustrated by what appeared to be purposeful misdirection and lack of cooperation, on May 30, 2017, Coach demanded a financial payment from Citi Trends in compensation for having imported the Seized Goods. Coach requested that Citi Trends respond to this demand no later than June 30, 2017, or else it would initiate the California Case. Coach reiterated its monetary demand – and its June 30, 2017 deadline – twice more: on June 9, 2017 and again on June 26, 2017.

Rather than provide a substantive response, *i.e.*, a counteroffer, to Coach's demand, Citi Trends filed the Maryland Case on June 27, 2017, three days before Coach's June 30th deadline. Purposefully waiting a day, counsel for Citi Trends, on June 28, 2017, sent counsel for Coach a copy of the Complaint filed in the Maryland Case along with an impossibly low counteroffer.[3] Counsel for Citi Trends threatened to serve the Complaint unless Coach accepted Citi Trends'

---

[3] This offer, $45,000, specifically represented the approximate profit that Citi Trends claimed it made on the 20,657 Sold Goods. This offer, by its very terms, excluded any compensation to Coach due to Citi Trends' importation of 1,400 handbags and wallets seized by CBP as counterfeit.

low counteroffer.   Coach did not accept Citi Trends' counteroffer and, instead, filed the California Case later that same day, June 28, 2017.

The complaint filed by Citi Trends in the Maryland Case conspicuously and assiduously avoids making any allegations regarding the Seized Goods, and for good reason.  In a subsequent telephone conversation between the parties' counsel, counsel for Citi Trends stated several times that she initiated the Maryland Case on June 28, 2017 because she had no intention of allowing her clients to be "sitting ducks" in the California Case, which she knew was scheduled to be filed on June 30, 2017.  Counsel's fear that Citi Trends would be a "sitting duck" is well-founded.

Coach's infringement claims related to the Seized Goods are based, in large part, on the sworn testimony of Mr. Jun Zhan, Citi Trends' source for the Seized Goods, taken in yet another case filed in the Central District of California: *Coach, Inc., et al. v. Jun Zhan, et al.*, Case No. 2:16-cv-05462 JFW (AFMx) (the "Zhan Case").  Mr. Zhan's sworn deposition testimony does, indeed, make Citi Trends a "sitting duck" against Coach's infringement claims, regardless of whether those claims were to be brought in this judicial district or in the Central District of California.  The very strength of those claims explains why Citi Trends consciously did not raise them in its Maryland Complaint, which was filed, after all, merely as leverage to induce Coach to accept a low-ball counteroffer.

Having miscalculated Coach's response to its filing of the Maryland Case, Citi Trends now finds itself having to prosecute a declaratory judgment action that is based on a purported controversy that does not actually exist, and *has never existed*.  Moreover, Citi Trends also has to defend itself against the very real and serious infringement claims regarding the Seized Goods that actually are at issue in the California Case.

To save the Maryland Case from dismissal for lack of subject matter jurisdiction, Citi Trends will argue that Coach's allegations regarding the Seized Goods, set forth in the draft copy of Coach's California Complaint and attached as an exhibit to the Maryland Complaint, are incorporated into the Maryland Complaint by reference. They are not. The Seized Goods are simply not a part of the Maryland Case, and quite intentionally so.

In the California Case, Citi Trends has filed a motion to dismiss or, alternatively, to transfer the case to the District of Maryland based on the "first-to-file" rule.[4] The "first-to-file" rule only applies where the issues in both cases substantially overlap. Contrary to Citi Trends' arguments both here and in the California Case, the issues raised in the Maryland Case and the California Case do not substantially overlap. The Maryland Case, on its face and as intended by Citi Trends, concerns only the 20,657 Sold Goods for which Citi Trends was confident it could cap its liability at less than $45,000 should it fail to prove non-infringement. *See* Complaint, Dkt. No. 1, ¶ 39. The California Case, on the other hand, concerns the willful importation of 800 counterfeit handbags and 600 counterfeit wallets for which Citi Trends is potentially liable for $4 million in statutory damages under the Lanham Act, 15 U.S.C. § 1117(c).

If the Court determines that the Maryland Case concerns only the Sold Goods, the Court should dismiss this case for lack of subject matter jurisdiction due to the absence of any actual controversy between the parties. If the Court determines, however, that the Maryland Complaint

---

[4] In opposition to that motion, Coach has argued, *inter alia*, that even if the "first-to-file" rule applies, the California Case should not be dismissed or transferred because the Maryland Case was filed as a preemptive, anticipatory suit merely to deprive Coach of litigating its claims related to the Seized Goods in its chosen forum. This motion has been fully briefed and taken under submission by the Court in California. It is currently pending decision.

has raised claims regarding the Seized Goods, the Court should nevertheless decline to exercise its discretion to hear this matter under the Act, and dismiss this case.[5]

## II.    LEGAL STANDARDS

### A.    Subject Matter Jurisdiction Under The Declaratory Judgment Act Depends Upon The Existence, At The Time Of Filing, Of An Actual Controversy

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The United States Supreme Court has interpreted this language to require that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

A declaratory judgment action must satisfy the case or controversy requirement of Article III of the United States Constitution.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).  To do so, it must present a dispute that is "definite and concrete, touching the legal

---

[5] *See, e.g., Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F. 3d 419, 423-24 (4th Cir. 1998) (affirming discretion of district court to decline subject matter jurisdiction under Declaratory Judgment Act where "*Aetna was using the declaratory relief mechanism to engage in procedural fencing and forum shopping.*") (emphasis added).

relations of parties having adverse legal interests." *Id*. at 127; *Aetna Life Ins. Co.*, 300 U.S. at 240–41. It must be a "real and substantial" controversy, admitting of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id*.

Where a trademark owner has never claimed, alleged, hinted or otherwise suggested to another party that the other party has specific goods infringing specific trademarks, it cannot be said that an actual controversy exists between the parties regarding those goods and trademarks sufficient to trigger subject matter jurisdiction under the Declaratory Judgment Act. Something more concrete and definite is required to justify hauling the trademark owner into court under the Declaratory Judgment Act. Otherwise, the court will simply be issuing an advisory opinion. *See, e.g., Superguide Corp. v. Kegan*, 987 F. Supp. 481, 483 (W.D.N.C. 1997); *Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F. Supp. 998, 999 (D. Md. 1985); *Chesebrough–Pond's, Inc. v. Faberge, Inc.*, 666 F. 2d 393, 396 (9th Cir. 1982); *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F. 3d 1377, 1379 (Fed. Cir. 2010); *1–800–Flowers.com, Inc. v. Edible Arrangements, LLC*, 905 F. Supp. 2d 451, 455 (E.D.N.Y. 2012); *Applera Corp. v. Michigan Diagnostics, LLC*, 594 F. Supp. 2d 150, 158 (D. Mass. 2009); *World Religious Relief v. Gospel Music Channel*, 563 F. Supp. 2d 714, 716 (E.D. Mich. 2008).

**B.**    **This Court Has Discretion To Decline Subject Matter Jurisdiction Under The Declaratory Judgment Act**

Even where subject matter jurisdiction exists, a district court retains discretion under the Declaratory Judgment Act regarding whether it will "declare the rights and other legal relations of any interested party." *MedImmune*, 549 U.S. at 136 ("The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' 28 U.S.C.

§ 2201(a), not that it must do so.") (emphasis in original); *Micron Tech. Inc. v. MOSAID Techs., Inc.*, 518 F. 3d 897, 903 (Fed. Cir. 2008) ("The word 'may' within the language of the Declaratory Judgment Act means that a court has discretion to accept a declaratory judgment action in the first place.").

The Fourth Circuit has articulated four factors that district courts should consider in deciding whether to exercise discretion in granting declaratory relief: (1) whether the judgment "will serve a useful purpose in clarifying the legal relations in issue;" (2) whether the judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding;" (3) considerations of federalism, efficiency, and comity; and (4) "*whether the declaratory judgment action is being used merely as a device for procedural fencing – that is, to provide another forum in a race for res judicata* or to achieve a federal hearing in a case otherwise not removable." *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.*, 139 F. 3d 419, 422–23 (4th Cir. 1998) (internal quotations omitted) (emphasis added); *see also, Hogs and Heroes Foundation*, 202 F. Supp. 3d at 498.

## C.    A Complainant Must Directly And Explicitly Incorporate By Reference.

Federal Rule of Civil Procedure 10(c) provides that "statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion." The Rule goes on to provide that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."[6] "Although there is no prescribed

---

[6] Although Rule 10(c) states that "written instruments" attached as exhibits to a pleading are "a part thereof," written instruments are distinct from pleadings. "Instruments are documents which have some legal effect of their own. Pleadings, on the other hand, are not facts or even evidence of the existence of facts but are merely one party's allegations of fact." *See General Acc. Ins. Co. of America v. Fidelity and Deposit Company of Maryland v. First Jersey National Bank,* 598 F. Supp. 1223, 1229 (E.D. Pa. 1984). "A 'written instrument' within the meaning of Rule 10(c) 'is a document evidencing legal rights or duties or giving formal expression to a legal act or

procedure for referring to incorporated matter, the references to prior allegations *must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation*." 5A Wright & Miller, *Federal Practice & Procedure: Civil 3d* § 1326 (citing, *inter alia, Arce v. Walker*, 139 F. 3d 329, 336 n. 7 (2d Cir. 1998)) (emphasis added); *see also Clark Constr. Group, Inc. v. Modern Mosaic*, 2000 WL 34458952, at *4 (D. Md. December 1, 2000) ("For all or part of a prior pleading to be incorporated in a later pleading, the later pleading must *specifically identify which portions of the prior pleading are adopted therein*.") (emphasis added).

While Rule 10(c) specifically authorizes adoption by reference of matter (including exhibits) contained in previous pleadings, it must be done with a degree of clarity which enables the responding party to ascertain the nature and extent of the incorporation. *See, generally, Aktiebolaget Stille-Werner v. Stille-Scanlan*, 1 F.R.D. 395 (S.D.N.Y. 1940). *See also United States v. International Longshoremen's Association*, 518 F. Supp. 2d 422, 461-62 (E.D.N.Y. 2007) ("As an initial matter, notwithstanding the Government's repeated assertions to the contrary at oral argument, the Court notes that nowhere in the Amended Complaint does the Government expressly incorporate by reference any portions of the attached exhibits.").

To incorporate any portion of an exhibit by reference into a complaint, the phrase "incorporation by reference" or some similar phrase should be used to give notice to the

---

agreement, such as a deed, will, bond, lease, insurance policy or security agreement.'" *Demarco v. Depotech Corporation*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001), quoting *Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F. Supp. 1108, 1115 (W.D.N.Y. 1996) (citing Black's Law Dictionary 801, 1612 (6th ed. 1990)). Neither Coach's draft California Complaint, nor Coach's cover letter sending that draft complaint to Citi Trends (*i.e.*, Exhibit 1 to the Maryland Complaint), qualifies as a "written instrument" as both merely set forth Coach's allegations, but do not have "some legal effect of their own" nor do they give "formal expression to a legal act or agreement."

defendant of the plaintiff's intent to incorporate some portion of the exhibit. *International Longshoremen's Association*, 518 F. Supp. 2d at 461-62. Incorporation by reference is defective where such a phrase is not used, and the exhibit appears to be attached to the complaint merely as "background to the factual allegations" that actually are asserted in the complaint. *Id*. The failure to specifically identify which portions of an exhibit a plaintiff intends to incorporate by reference into its complaint "makes it impossible for the court or the defendants to ascertain the nature and extent of the incorporation, and the purported incorporation is therefore invalid." *Id*.

Such defective incorporation by reference is also a "blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *International Longshoremen's Association*, 518 F. Supp. 2d at 461-62; quoting Rule 8(a)(2). A defective incorporation by reference in a complaint deprives the defendant of the opportunity to adequately reply to the purportedly incorporated allegations. *Id*. ("[I]f the Government's position were accepted, the defendants would be forced to respond in their Answer not only to each of the 258 paragraphs of the Amended Complaint, but also to each and every paragraph of every attached pleading, some of which, as noted above, are inconsistent with the allegations made in the Amended Complaint itself.").

Where a short and plain statement required by Rule 8(a)(2) does not appear in the complaint itself, such a defect cannot be remedied by an equally defective claim to have incorporated by reference exhibits to the complaint. *See, e.g., Davis v. Bifani,* 2007 WL 1216518, at *1 (D. Colo. April 24, 2007) (Court "does not believe that it should be required to look to a separate complaint" to "determine exactly what additional claims for relief Plaintiff intends to plead in this case."); *General Acc. Ins. Co. of America v. Fidelity and Deposit Company of Maryland v. First Jersey National Bank,* 598 F. Supp. 1223, 1229 (E.D. Pa. 1984)

("For all or part of a prior pleading to be incorporated in a later pleading, the later pleading must specifically identify which portions of the prior pleading are adopted therein."); *Heintz & Co. v. Provident Tradesmen Bank and Trust Company*, 29 F.R.D. 144, 145-46 (E.D. Pa. 1961) (attaching the original complaint to the third-party complaint did not incorporate the original complaint so as to prevent dismissal of the third-party complaint for failure to state a claim).

## III.    FACTS

### A.    Coach Has Never Asserted Any Claims Against Plaintiffs Regarding The 20,657 Sold Goods

Coach sent a draft of its California Complaint to Citi Trends on April 25, 2017.  Watkins Decl., ¶ 6.  The cover letter enclosing the draft California Complaint set a deadline of May 5, 2017 to respond, or else Coach would file the California Complaint.  *Id*.  On April 27, 2017, in-house counsel for Citi Trends, Michael Buchsbaum, telephoned Coach's counsel to discuss the draft California Complaint.  *Id*.  During that telephone call, Coach's counsel requested that Citi Trends disclose information regarding any products purchased and sold by Citi Trends that may have borne designs similar to any designs or trademarks utilized by Coach on its handbags and wallets.  *Id*.  Coach's counsel did not make any monetary demand on that telephone call.  *Id*.

On May 11, 2017, Mr. Buchsbaum e-mailed to Coach's counsel a spreadsheet related to the 20,657 Sold Goods, three photographs of a single handbag, and one photograph of swatches.  Watkins Decl., ¶ 7.  In this e-mail, Mr. Buchsbaum indicated that the spreadsheet was overinclusive, and contained information about handbags that may not be relevant to Coach's concerns.  *Id*.  Mr. Buchsbaum also indicated that the three photos were the only photographs of potentially relevant handbags that Citi Trends could find.  *Id*.  Mr. Buchsbaum did not provide any further information about the handbag depicted in the photographs, such as whether it was

only a one-off sample that was never sold, or whether it related to any of the line-items of Sold Goods reflected on the spreadsheet. *Id*.

On May 15, 2017, Coach's counsel sent an e-mail to Mr. Buchsbaum thanking him for providing the foregoing documents, but also requesting copies of the purchase orders reflected in the spreadsheet, copies of correspondence between Citi Trends and its vendor for the Sold Goods, and copies of additional photographs of the Sold Goods. Watkins Decl., ¶ 8. On May 18, 2017, Mr. Buchsbaum e-mailed Coach's counsel copies of 19 purchase orders related to the Sold Goods. *Id*. In this e-mail, Mr. Buchsbaum asserted that there were no additional photographs of the Sold Goods to provide. *Id*. Mr. Buchsbaum also asserted that Citi Trends did not have any samples of any of the Sold Goods, such samples having already been destroyed. *Id*. Mr. Buchsbaum did not produce any correspondence. *Id*. None of the documents produced by Mr. Buchsbaum appears to be related to the Seized Goods, despite the fact that Citi Trends must possess such documents. *Id*.

Coach evaluated the information provided by Citi Trends and determined that, in addition to bearing no relation to the Seized Goods, it was insufficient to support allegations of infringement against Citi Trends with respect to the 20,657 Sold Goods. Watkins Decl., ¶ 9. *See also* Declaration of Amy Melican ("Melican Decl."), filed in support hereof, ¶¶ 2-4. The primary deficiencies in the information provided by Citi Trends were the lack of photographic evidence and samples showing the designs used on the 20,657 Sold Goods, and the lack of any other evidence that might shed light on the designs actually used on the 20,657 Sold Goods. *Id*. Without any evidence regarding the actual designs used on the 20,657 Sold Goods, it is virtually impossible to determine whether any of the goods infringe Coach's trademarks. *Id*. Coach determined that the three photographs of the one handbag, without any additional information

regarding whether and to what extent Citi Trends actually sold any such handbags, were insufficient evidence upon which to assert a good-faith claim of infringement against Citi Trends with respect to the 20,657 Sold Goods. *Id*. At no time has Coach ever stated, suggested, hinted, or asserted any claim of infringement as to the 20,657 Sold Goods. *Id*.

**B.**    **The Maryland Complaint Does Not Assert Claims Regarding The Seized Goods**

The operative paragraphs in Coach's California Complaint, *i.e.*, paragraphs 23 – 44, allege that Plaintiffs infringed Coach's U.S. Registered Trademark No. 2,822,318 (the "Signature C Mark"), by conspiring with one of their vendors to import 800 counterfeit handbags and 600 counterfeit wallets (*i.e.*, the Seized Goods) into the Port of Long Beach on or about August 24, 2015 and September 22, 2015, respectively. *See* Declaration of Samuel R. Watkins ("Watkins Decl."), ¶ 2; Exhibit A. This complaint, as filed in the California Case, is word-for-word the same as the draft complaint mailed to Citi Trends on April 25, 2017. *Id*.; *compare* Watkins Decl., Exhibit A with Exhibit 1 to Maryland Complaint. Because these 1,400 handbags and wallets were seized by CBP, they were never received or resold to the public by Plaintiffs. *Id*., ¶ 3.

Plaintiffs' Complaint filed in the Maryland Case, however, seeks a declaration of non-infringement with respect only to handbags that they actually received and resold to the public. The Maryland Complaint does not mention the Seized Goods at all, nor does the Maryland Complaint seek a declaration of non-infringement – or any other relief – with respect to the Seized Goods. Given the ease with which Plaintiffs could have made specific allegations regarding the Seized Goods in the Maryland Complaint, it is clear that Plaintiffs purposefully elected not to do so. Instead, Plaintiffs expended their entire effort asserting claims focused only

on the Sold Goods, about which Plaintiffs believed they could cap their liability to less than $45,000. A straightforward reading of the Maryland Complaint makes this clear, as shown below:

| Paragraph No. | Allegation (emphasis in **bold** added) |
| --- | --- |
| 1. | "Defendants have alleged in cease-and-desist correspondence that **certain handbags purchased and re-sold** by Plaintiffs are counterfeit handbags … . Plaintiffs seek a declaratory judgment that the **handbags in question** are not counterfeit and do not infringe Defendants' marks, and that Plaintiffs' actions in **purchasing, marketing and selling** stylized handbags do not subject it to liability … ." |
| 12. | "On behalf of Citi Trends, in **2014 and 2015** Martin purchased **handbags** … bearing stylized markings, trims, **and rhinestones** (the "Subject Handbags")." |
| 15. | "Plaintiffs cooperated fully with Coach. In particular, Plaintiffs provided to Coach all information requested by Coach concerning **orders and sales** of the Subject Handbags." |
| 16. | "Citi Trends provided Defendants with information showing that Citi Trends may have **purchased and received** as many as 20,657 of the Subject Handbags **for which it paid $46,082**." |
| 17. | "Citi Trends received approximately $44,839 in profits in connection with **the sale of the Subject Handbags**." |
| 25. | "One of the **designs on the Subject Handbags** ("Design") appears as follows:" [NB: the image of the "Design" in the Maryland Complaint not |

| | reproducible here] |
|---|---|
| 37. | "Plaintiffs seek a declaration that **the Subject Bags** [sic] do not contain counterfeit marks and do not infringe upon Defendant's [sic] trademarks … ." |
| 39. | In the alternative, Plaintiffs seek a declaration that **damages**, whether categorized as actual damages, accounting of profits, statutory damages or otherwise, **are not more than $44,839**, **Citi Trends' gross revenues from the sale of the Subject Handbags** less cost of **goods sold**. |

As the plain language of the Maryland Complaint makes clear, Plaintiffs seek a declaration of non-infringement only with respect to the 20,647 handbags which they purchased and resold, for which they paid $46,082, and for which they received $44,839 in gross revenue after they sold the handbags, after deducting the cost of goods sold, *i.e.*, the cost of purchase, transportation, marketing, insurance, labor, etc., attributable to the handbags actually received and sold.

Nowhere in the Maryland Complaint is there any mention of the 800 counterfeit handbags and 600 wallets that were seized by CBP in August and September 2015, and thus were never received and sold by Plaintiffs. Nowhere in the Maryland Complaint do Plaintiffs seek a declaration of non-infringement with respect to the Seized Goods. Even Plaintiffs' alternative prayer for relief in the Maryland Complaint, at paragraph 39, is tied specifically to the profit made on the *sales* of the Subject Handbags less the *cost of goods sold*, making it clear that the Maryland Complaint pertains only to the Sold Goods, to the exclusion of the Seized Goods.

Perhaps even more important than the foregoing, the Sold Goods that are the subject of the Maryland Complaint bear a design that is completely different than the design borne by the Seized Goods.  Attached as Exhibit B to the Watkins Decl. is a copy of a photograph of the handbags seized by CBP in August 2015.  A simple comparison of this photograph of the Seized Goods with the photograph of the Sold Goods at paragraph 25 of the Maryland Complaint shows that the two designs are completely different.  In addition, the Maryland Complaint, at paragraph 12, defines "Subject Handbags" as "handbags and wallets bearing stylized markings, trims, and rhinestones."   The handbag depicted at paragraph 25 of the Maryland Complaint bears rhinestones.  The counterfeit handbags seized by CBP do not.  Two different designs; two different cases.

**C.**    **The Maryland Complaint Does Not Incorporate By Reference The Operative Paragraphs Of Coach's California Complaint Concerning The Seized Goods**

The Maryland Complaint mentions Coach's draft California Complaint and/or its cover letter, *i.e.*, Exhibit 1 to the Maryland Complaint, in the following paragraphs:

| Paragraph No. | Allegation |
|---|---|
| 1. | "Defendants have alleged in cease-and-desist correspondence that certain handbags purchased and re-sold by Plaintiffs are counterfeit handbags … |
| 19. | "Coach, through counsel, asserted that Plaintiffs' 'acts of infringement expose Citi Trends to … statutory damages under applicable law."  True copies of Defendants' letter and draft Complaint accompany this Complaint as Exhibit 1. |
| 21. | "Among the trademarks cited in Defendants' draft Complaint are a number of marks that incorporate the word 'Coach.'" |

| 24. | "Among the trademarks cited in Defendants' draft Complaint are U.S. Reg. Nos. 2,626,565, 2,822,318 and other registrations for the stylized marks, each with the literal element CC CC CC CC, appearing as follows: [image not reproducible here] (collectively the 'Coach Stylized C Marks')." |
|---|---|
| 36. | "Defendants' letter and draft Complaint sent to Citi Trends show an actual controversy subject to relief under 28 U.S.C. § 2001 et seq." |

Despite having a copy of Coach's draft California Compliant, Plaintiffs chose not to make a short and plain statement in their Maryland Complaint regarding the 800 counterfeit handbags and 600 wallets seized by CBP in the Port of Long Beach. Nor did Plaintiffs anywhere in their Maryland Complaint use the words "incorporate by reference," or any similar phrase, when discussing Coach's draft California Complaint. Nowhere in the Maryland Complaint did Plaintiffs directly and explicitly reference the allegations regarding the Seized Goods found in the operative paragraphs of Coach's draft California Complaint, *i.e.*, paragraphs 23 – 44. Exhibit 1 to the Maryland Complaint appears to be attached merely as background to the factual allegations that Plaintiffs actually asserted in the Complaint.

Plaintiffs chose their words very carefully, restricting their claims of non-infringement to only those handbags that they purchased, received, and resold, that bore rhinestones, that bore the design reflected in paragraph 25 of the Maryland Complaint, and that generated less than $45,000 in profit. The Seized Goods at issue in the California Case fail to satisfy any of these descriptors specifically used by Plaintiffs define the universe of handbags at issue in the Maryland Case. In short, Plaintiffs knowingly and consciously restricted their Maryland Complaint to only the 20,657 handbags for which they believed they could cap their potential

liability to Coach at less than $45,000, to the exclusion of the counterfeit goods seized in the Port of Long Beach.

### D. Communications From Citi Trends' Counsel Confirm That The Maryland Complaint Does Not Assert Claims Regarding The Seized Goods

Before Plaintiffs could file their motion to dismiss or transfer in the California Case, the parties' were required to conduct a telephonic meet and confer. Watkins Decl., ¶ 4. On this call, counsel for Plaintiffs, Ms. Sherry Flax, defended the filing of the Maryland Complaint on June 27, 2017 by stating that she had no intention of allowing her clients, *i.e.*, Citi Trends and Kelly Martin, to be "sitting ducks" in the California Case, which she knew was scheduled to be filed June 30, 2017. *Id*. Ms. Flax made this statement several times during the call. *Id*.

The reason why Ms. Flax believed her clients would be "sitting ducks" in the California Case is because the proof of their knowing and willful counterfeiting of Coach's trademarks is overwhelming. Plaintiffs would be a "sitting duck" against these claims in any judicial district, whether located in Maryland or California, which is why those claims were purposefully not put at issue by Plaintiffs' Maryland Complaint. Because the Maryland Complaint was filed merely to gain negotiating leverage over Coach, it would have not have served Plaintiffs' purposes at all to initiate a lawsuit raising Coach's serious and overwhelmingly-supported infringement claims.

For example, Plaintiffs' vendor who supplied the counterfeit handbags and wallets, Mr. Jun Zhan, testified under oath at his deposition in the Zhan Case that, on a trip to China, he purposely selected the design to be used on the Seized Goods precisely because it looked like the design used on genuine Coach products. Watkins Decl., ¶ 5; Ex. D (excerpts from Mr. Zhan's sworn deposition testimony taken in the Zhan Case). Mr. Zhan further testified that he showed swatches of this design to Martin, Citi Trends' buyer, at his offices (located within the Central

District of California) and that she directed Mr. Zhan to proceed with the manufacture and importation of sample handbags and wallets using this design. *Id.* Mr. Zhan testified that Martin subsequently inspected the samples bearing this counterfeit design, approved them, and directed Mr. Zhan to procure the 800 counterfeit handbags and 600 counterfeit wallets that eventually were seized by CBP. *Id.* Significantly, the Seized Goods bore Citi Trends' hangtags when seized, as shown in the photograph of the seized handbags. *Id.*, Exhibit B.

E.    **The Maryland Case Is An Anticipatory, Forum-Shopping Lawsuit Filed In Secret Simply To Avoid Litigation In Coach's Chosen Forum**

Frustrated by Citi Trends' inability or refusal to produce any documents related to the Seized Goods, and any documents useful to evaluating the nature of the Sold Goods, on May 30, 2017, Coach's counsel telephoned Mr. Buchsbaum at Citi Trends and made a monetary demand, setting a June 30, 2017 deadline to avoid the filing of the draft California Complaint. Watkins Decl., ¶ 10. On June 9, 2017, Coach's counsel received an e-mail from Jeffrey A. Koblunick, a partner in the law firm of Brutzkus Gubner Rozansky Seror Weber LLP, located in Woodland Hills, California (Citi Trends' "California Counsel"). *Id.*, ¶ 11. Mr. Koblunick stated that his firm represented Citi Trends with respect to Coach's claims of infringement. *Id.* Mr. Koblunick directed Coach's counsel to direct all future communications to his office. *Id.*

Coach's counsel replied to Mr. Koblunick's e-mail that same day, June 9, 2017, reiterating Coach's monetary demand, with a June 30, 2017 deadline to comply or else the draft California Complaint would be filed. Watkins Decl., ¶ 12. Coach's counsel received no further communications from Mr. Koblunick's offices. *Id.* On the afternoon of June 26, 2017, Coach's counsel received a telephone call from Ms. Sherry Flax, current counsel for Citi Trends. *Id.*, ¶ 13. Ms. Flax is a partner in the Baltimore, Maryland office of Saul Ewing Arnstein & Lehr

LLP (Citi Trends' "Maryland Counsel").  *Id*.  Ms. Flax explained that Citi Trends had retained her to conduct an "independent review" of Coach's infringement claims, and she requested to speak to Coach's counsel regarding the bases for Coach's claims and the size of Coach's monetary demand.  *Id*.  Ms. Flax did not state or suggest that the purpose of her call was to make a counteroffer to Coach's monetary demand.  *Id*.

Coach's counsel received Ms. Flax's statements as an invitation to argue the merits of Coach's infringement claims, and not as a substantive response, *i.e.*, a counteroffer, to Coach's monetary demand.  Watkins Decl., ¶ 14.  Coach's counsel did not have the time, or the desire, to argue the merits of Coach's claims with Ms. Flax on that call.  *Id*.  Coach's counsel also wanted to first discuss with Coach this new wrinkle in the case, *i.e.*, Citi Trends' California Counsel being abruptly replaced by Maryland Counsel just days before Coach's June 30, 2017 filing deadline.  *Id*.  To end the call with Ms. Flax politely, Coach's counsel stated that he was busy with another matter and suggested that another telephone call be scheduled for 12:00 noon PDST, June 28, 2017.  *Id*.

Coach's counsel discussed Ms. Flax's telephone call with Coach after terminating the call with Ms. Flax.  Watkins Decl., ¶ 15.  Coach and their counsel agreed that the purpose of Ms. Flax's call was not to make a counteroffer to Coach's monetary demand, but rather to argue the merits of Coach's claims and delay and drag-out the June 30, 2017 deadline.  *Id*.  At 2:18 p.m. PDST, June 26, 2017, Coach's counsel sent an e-mail to Ms. Flax expressing Coach's disappointment that Citi Trends had not provided a substantive response to Coach's demand. Watkins Decl., ¶ 15.  This e-mail expressly reiterated that Citi Trends still had four more days, *i.e.*, until Friday, June 30, 2017, to make a substantive response to Coach's demand to avoid filing of the draft California Complaint.  *Id*.

Rather than utilizing the remaining four days to make and convey a substantive response, *i.e.*, a counteroffer, to Coach's claims, Plaintiffs filed the Maryland Complaint on June 27, 2017, three full days before Coach's deadline of June 30, 2017.  Watkins Decl., ¶ 16.  The Maryland Complaint was filed in secret.  *Id*.  Only after the Maryland Complaint was filed did Ms. Flax e-mail a copy of the as-filed Maryland Complaint to Coach's counsel, along with a monetary counteroffer, on June 28, 2017.  *Id*.; Exhibit C (copy of e-mail from Ms. Flax).  Plaintiffs' monetary counteroffer was for $45,000, and specifically represented Citi Trends' approximate profit on the Sold Goods.[7]  *Id*.  At no time between April 25, 2017 and June 28, 2017 did Plaintiffs or any of their representatives even remotely suggest that Plaintiffs would file a declaratory judgment action rather than substantively respond to Coach's demand.  *Id*.

On June 25, 2017, Ms. Flax requested a telephonic meet and confer with Coach's counsel regarding Citi Trends' proposed motion to dismiss or transfer the California Case.  Watkins Decl., ¶ 4.  Coach's counsel telephoned Ms. Flax at 2:16 p.m. PDST on June 25, 2017.  *Id*.  Several times during this telephone call, Ms. Flax defended the filing of the Maryland Complaint on June 27, 2017 by stating that she had no intention of allowing her clients, *i.e.*, Citi Trends and Martin, to be "sitting ducks" in the California Case, which she knew was scheduled to be filed June 30, 2017.  *Id*.

---

[7] Citi Trends publicly filed this particular copy of Ms. Flax's June 28, 2017 e-mail in the California Case, thus waiving any claim Citi Trends may have had to confidentiality of its $45,000 offer under FRE 408 or any other authority.  *See* California Case, Docket No. 19-1; p. 49 of 60.

IV.    <u>**ARGUMENT**</u>

    A.    <u>**The Court Lacks Subject Matter Jurisdiction Over This Case.**</u>

Coach has never alleged, claimed, or suggested to Plaintiffs that any of the 20,657 Sold Goods infringes any trademark owned by Coach.  The scant information provided by Plaintiffs simply is an insufficient basis upon which Coach may in good faith allege claims of infringement against Plaintiffs.  Plaintiffs have merely, but improperly, bootstrapped Coach's actual and real infringement claims regarding the Seized Goods onto the Sold Goods.  There simply is not, and never has been, an actual controversy between Coach and Plaintiffs regarding the 20,657 Sold Goods.

A declaratory judgment action must satisfy the case or controversy requirement of Article III of the United States Constitution.  *MedImmune*, 549 U.S. at 126–27.  To do so, it must present a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests."  *Id*. at 127; *Aetna Life Ins. Co.*, 300 U.S. at 240–41.  It must be a "real and substantial" controversy, admitting of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id*.  There is no case or controversy between Coach and Plaintiffs regarding the 20,657 Sold Goods that satisfies Article III.

Accordingly, if this Court agrees that the Seized Goods are not a part of the Maryland Case, then the Court should dismiss this case.

    B.    <u>**Even If The Court Determines That Subject Matter Jurisdiction Exists, The Court Should Decline To Hear This Preemptive, Anticipatory Suit.**</u>

Even if this Court determines that subject matter jurisdiction exists, it retains the discretion under the Act to decline to hear this case.  *MedImmune*, 549 U.S. at 136; *Micron Tech.*

*Inc.*, 518 F. 3d at 903. The four factors that district courts should consider in deciding whether to exercise discretion in granting declaratory relief are: (1) whether the judgment "will serve a useful purpose in clarifying the legal relations in issue;" (2) whether the judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding;" (3) considerations of federalism, efficiency, and comity; and (4) "whether the declaratory judgment action is being used merely as a device for procedural fencing – that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable." *Aetna Cas. & Sur. Co.*, 139 F. 3d at 422–23 (internal quotations omitted); *Hogs and Heroes Foundation*, 202 F. Supp. 3d at 498.

To varying degrees, all four of the foregoing factors are implicated by the fact that Coach has filed its California Complaint to pursue its actual infringement claims against Plaintiffs regarding the Seized Goods, and Plaintiffs preemptively filed their Maryland Complaint purportedly in reaction to Coach's (non-existent) claims of infringement regarding the Sold Goods.

As to the first and second factors, Coach has never claimed that any of the 20,657 Sold Goods infringe any of its trademarks. Plaintiffs concede that the very evidence they need to prove the non-infringement of the 20,657 Sold Goods, *i.e.*, samples, photographs, etc., does not exist. Proceeding to a trial on these facts will lead to a veritable train wreck, not a judgment that "will serve a useful purpose in clarifying the legal relations in issue" or "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

As to the third factor, the only actual dispute between the parties relates to the Seized Goods, which have been put at issue in the California Case. The Seized Goods were seized in the Port of Long Beach, located within the Central District of California. The manufacture and

importation of the Seized Goods was coordinated on Plaintiffs' behalf by Mr. Jun Zhan, working out of his offices located within the Central District of California. The conduct underlying, and the key witness to, the illegal importation of the Seized Goods are to be found in the Central District of California. For the sake of comity and efficiency, this Court should decline jurisdiction over any claims regarding the Seized Goods and allow them to be heard by the court in the Central District of California.

As to the fourth factor, the Maryland Case is a preemptive, anticipatory suit, filed in a secret race to the courthouse. It is a blatant attempt to forum shop and thus deprive Coach of its choice of forum. If for no other reason, the Court should decline to hear this case for this reason alone. *See, e.g., Hogs and Heroes Foundation, Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 498 (D. Md. 2016); *Great American Ins. Co. v. Houston General Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) ("[T]he misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action."); *Casualty Indemnity Exchange v. High Croft Enterprises, Inc.*, 714 F. Supp. 1190, 1193-94 (S.D. Fla. 1989) ("Moreover, the declaratory remedy is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse.").

The Maryland Complaint was filed only after Citi Trends received Coach's draft California Complaint, and only after Citi Trends was informed on multiple occasions of Coach's June 30, 2017 filing deadline absent a substantive settlement counteroffer from Plaintiffs. Coach provided a copy of its draft California Complaint to Citi Trends on April 25, 2017. On at least three separate occasions, *i.e.*, on May 30, 2017, June 9, 2017, and June 26, 2017, Coach's counsel informed Citi Trends, Citi Trends' California Counsel, and Citi Trends' Maryland

Counsel, respectively, of Coach's monetary demand to settle the parties' dispute, as well as Coach's June 30, 2017 filing deadline.

Rather than provide Coach with a counteroffer to its demand, Plaintiffs elected to file the Maryland Complaint in secret. As Plaintiffs' Maryland Counsel has conceded, the Maryland Complaint was filed to avoid Plaintiffs being "sitting ducks" in Coach's prospective California Case. This concession is a clear signal of Plaintiffs' blatant forum shopping, done in secret, simply to deprive Coach of its choice of forum to hear their claims.

Moreover, in this case, Citi Trends had retained California Counsel to engage with Coach's counsel as early as June 9, 2017, when Coach's counsel received the e-mail from Mr. Koblunick, of the Woodland Hills, California, law firm of Brutzkus Gubner Rozansky Seror Weber LLP. Citi Trends abruptly changed legal counsel, however, by June 26, 2017, when Ms. Flax telephoned Coach's counsel for the first time. This change in counsel, from California to Maryland, is another clear signal of Plaintiffs' blatant forum shopping.

The Court should not reward Plaintiffs' blatant forum shopping and abuse of the Declaratory Judgment Act. The Court should dismiss this case.

## V.    <u>CONCLUSION</u>

The Court should dismiss Plaintiffs' Maryland Complaint for lack of subject matter jurisdiction. If Court determines that subject matter jurisdiction does exist, the Court should

nonetheless dismiss this case in an exercise of its discretion under the Declaratory Judgment Act

due to Plaintiffs' blatant forum shopping.

Dated:  November 20, 2017                    Respectfully submitted,


By ____/s/ Samuel R. Watkins_____
Samuel R. Watkins, *admitted pro hac vice*
THOMPSON COBURN LLP
2029 Century Park East, 19th Floor
Los Angeles, California 90067
T: 310-282-9451 (direct)
F: 310-282-2501
swatkins@thompsoncoburn.com

Harvey A. Levin, Md. Fed. Id. No. 03163
THOMPSON COBURN LLP
1909 K Street, N.W., Suite 600
Washington, DC 20006
T: 202-585-6942 (direct)
F: 202-508-1013 (direct)
hlevin@thompsoncoburn.com

*Attorneys for Defendants COACH, INC. and
COACH SERVICES, INC.*