IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CITI TRENDS, INC., *et al.*,        *

    Plaintiffs,        *

                                            Civil Action No. RDB-17-1763

v.        *

COACH INC., *et al.*,        *

    Defendants.        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

This case stems from Coach, Inc., and Coach Services, Inc.'s (collectively, "Coach" or "Defendants") allegations that Citi Trends, Inc. and Kelly Martin (collectively, "Plaintiffs") attempted to sell counterfeit goods that were seized by the United States Bureau of Customs and Border Protection in the Port of Long Beach, California. Following communications between the parties concerning these allegations, Plaintiffs filed a one-count Complaint in this Court against Defendants, seeking a declaratory judgment that certain handbags purchased and re-sold by Plaintiffs are not counterfeit and do not infringe on Defendants' trademarks.[1] (Compl., ECF No. 1.)

Currently pending before this Court are Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 18), Plaintiffs' Motion to Amend the Complaint (ECF No. 22), and Plaintiffs' Motion to Stay the Proceedings (ECF No. 27).[2] The parties' submissions have

---

[1] Plaintiffs further seek a declaration that their actions have not subjected them to liability under the Lanham Act, 15 U.S.C. §§ 1114, 1124, 1125(a); Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a); Unfair Competition under Cal. Bus & Prof. Code § 17200 *et seq.*, or California common law unfair competition.

[2] Although improperly filed as a Local Rule 104.7 Certificate, also pending is a Motion to Compel by the Plaintiffs. (ECF No. 17.) As discussed below, this Court grants Defendants' Motion to Dismiss, and accordingly, Plaintiffs' motion is moot.

been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 18) is GRANTED, Plaintiffs' Motion to Amend the Complaint (ECF No. 22) is DENIED, and Plaintiffs' Motion to Stay Proceedings (ECF No. 27) is MOOT.[3]

## BACKGROUND

Plaintiff Citi Trends operates over five-hundred stores as a retailer selling apparel, shoes, accessories, and home décor. (Compl., ECF No. 1 at ¶ 10.) In 2014 and 2015, Plaintiff Kelly Martin, a buyer for Citi Trends, purchased "handbags and wallets bearing stylized markings, trims, and rhinestones" (the "Subject Handbags"). (*Id.* at ¶¶ 11-12.) Citi Trends then marketed and sold some of the Subject Handbags, receiving approximately $44,839 in profits from the sales. (*Id.* at ¶¶ 13-17.) In 2015, Plaintiffs ceased purchasing the Subject Handbags. (*Id.* at ¶ 18.)

In April of 2017, Coach contacted Citi Trends regarding its infringement on one or more of Coach's trademarks. (*Id.* at ¶ 14.) Specifically, counsel for Coach sent the Acting Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer of Citi Trends a letter, stating in part:

> In late 2015, Coach was informed by the United States Bureau of Customs & Border Protection ("CBP") that the agency had seized, in the Port of Long

---

[3] Citi Trends seeks a stay pending this Court's ruling on its motion to compel Coach to provide various information, documents, and testimony concerning the seized goods. (ECF No. 17-1.) A party seeking a stay "must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 127 (4th Cir. 1983); *Northstar Services, Ltd. v. MJM Inv. Properties, LLC*, No. MJG-16-4017, 2017 WL 1207586, at *2 (D. Md. Apr. 3, 2017). In *Northstar Services*, this Court articulated three factors to consider when deciding whether to stay a proceeding: the interests of judicial economy, hardship and equity to the moving party if the case is not stayed, and potential prejudice to the non-moving party. Given that the information Citi Trends seeks is from an individual Citi Trends worked with to import the seized goods back in 2015 and also deposed on October 17, 2017, Citi Trends has not justified its need for a stay by clear and convincing evidence outweighing potential harm. Further, Citi Trends can proceed in gathering discovery for its defense in the California forum.

2

> Beach, California, several hundred handbags and several hundred wallets bearing counterfeit versions of one of Coach's registered trademarks. In the course of investigating this matter, Coach has learned that these counterfeit handbags and wallets were intended for Citi Trends, Inc. ("Citi Trends"), to be sold throughout the United States. . . . Enclosed is a draft complaint asserting claims against Citi Trends and its buyer . . .. These claims apply not only to the counterfeit handbags and wallets that were seized by CBP, but also to additional counterfeit handbags and wallets that escaped detection and seizure by CBP, and thus were sold into the United States by Citi Trends.

(ECF No. 1-1.) The attached draft complaint indicated that it would be filed in the United States District Court for the Central District of California, as "a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and Defendants conduct business within this judicial district." (ECF No. 18-4 at ¶ 10.) The draft complaint also detailed the United States Bureau of Customs and Border Protection's (CBP) discovery in the Port of Long Beach, California, of two shipments of goods—personally selected by Plaintiff Martin for Plaintiff Citi Trends—bearing counterfeit versions of Coach trademarks.

After Citi Trends received the letter and draft complaint, the parties engaged in a series of communications and document exchanges. On May 30, 2017, after the discussions were allegedly unproductive, Coach asserts that it demanded a financial payment from Citi Trends "for having imported the Seized Goods." (ECF No. 18-1 at 6.) Coach also stated that if it did not receive the monetary demand by June 30, 2017, it would file its suit against Plaintiffs in California. (*Id.*) Three days before that deadline, on June 27, 2017, Plaintiffs filed the instant action in this Court. The Complaint seeks a declaratory judgment that the Subject Handbags are not counterfeit and do not infringe on Defendants' trademarks, and Plaintiffs' actions have not subjected them to liability under the Lanham Act, 15 U.S.C. §§ 1114, 1124, 1125(a); Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a); Unfair Competition in

3

violation of Cal. Bus & Prof. Code § 17200 *et seq.*; or California common law unfair competition. On June 28, 2017, Defendants filed suit against Plaintiffs in the United States District Court for the Central District of California, alleging the various trademark infringement and unfair competition claims.[4] On November 20, 2017, Defendants filed a Motion to Dismiss, and Plaintiffs filed a Response in Opposition. (ECF Nos. 18, 19.) One day after filing the Response, Plaintiffs also filed a Motion to Amend, which Defendants oppose. (ECF Nos. 22, 24.) Subsequently, on January 19, 2018, Plaintiffs filed a Motion to Stay the Proceedings, pending this Court's ruling on a discovery matter. (ECF No. 27.)

**STANDARD OF REVIEW**

**I.     Motion to Amend**

A plaintiff may amend his or her complaint once as a matter of course before a responsive pleading is served, or within twenty-one days of service of a responsive pleading or motion under Federal Rule of Civil Procedure 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a). While Rule 15(a) requires that leave "shall be freely given when justice so requires," *id.*, a district court may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on

---

[4] *See Coach Inc., et al. v. Citi Trends, Inc., et al.*, Case No. 2:17-cv-04775-DMG-KS. Currently pending in the California case is Citi Trends' and Kelly Martin's motion to dismiss or transfer the case to this Court, given that they filed the instant suit first. The United States District Court for the Central District of California has not yet ruled on the motion. On November 20, 2017, Coach filed a notice in the California court that it had filed a motion to dismiss for lack of subject matter jurisdiction in this case.

4

its face." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986).

## II. Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D. Md. 2005). Article III of the U.S. Constitution limits judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249 (1990) (citations omitted). Accordingly, a court's subject matter jurisdiction depends on the existence of an actual case or controversy. *S.C. Coast Conservation League v. U.S. Army Corps. of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction. *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). In a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, however, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. The court, therefore, "may regard the pleadings as

5

mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

**ANALYSIS**

The Declaratory Judgment Act (the "Act") provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. For an actual controversy to exist, a plaintiff must show a dispute that is "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764 (2007) (citation omitted). In trademark litigation, there is a case or controversy if the party seeking the declaratory judgment has been threatened with an infringement or dilution suit. *TEKsystems, Inc. v. TekSavvy Solutions, Inc.*, No. ELH-16-4215, 2017 WL 4805234 (D. Md. Oct. 25, 2017) (citing 3-11 *Gilson on Trademarks* § 11.04).

I.   **Motion to Amend**

Plaintiffs seek to amend the Complaint, asserting that "[t]he Amended Complaint simply clarifies the scope of the declaration, which is the core dispute between the parties." (ECF No. 22-1 at 4.) Additional background information and a discussion of the parties' filings shed light on Plaintiffs' reasons for seeking to amend the complaint. On April 25, 2017, Defendants sent Plaintiffs the letter with the attached draft complaint asserting various infringement claims, with respect to the items seized by the United States Bureau of

6

Customs and Border Protection in California. (ECF 1-1.) After subsequent discussions were allegedly fruitless, on May 30, 2017, Coach asserts that it demanded a financial payment from Citi Trends "for having imported the Seized Goods." (ECF No. 18-1 at 6.) Coach also stated that if it did not receive the monetary demand by June 30, 2017, it would file its suit against Plaintiffs in California. (*Id.*) Three days before that deadline, on June 27, 2017, Plaintiffs filed the instant action in this Court. The next day, Defendants filed their suit against Plaintiffs in the United States District Court for the Central District of California.

Plaintiffs Original Complaint seeks "a declaration that the *Subject Bags* do not contain counterfeit marks and do not infringe upon Defendant's trademarks." (Compl., ECF No. 1 at ¶ 37) (emphasis added). These bags refer to as many as 20,657 Subject Handbags that Citi Trends purchased, received, and sold, and for which it received approximately $44,839 in profits. (*Id.* at ¶¶ 16-17.) Coach subsequently filed its Motion to Dismiss. First, Coach asserts that this Court does not have subject matter jurisdiction under the Act. In so arguing, Defendants draw a distinction between two types of "Subject Handbags" at issue: (1) sold goods that Plaintiffs imported from China and actually sold into U.S. commerce (the "sold goods"); and (2) seized goods that Plaintiffs attempted to import but were seized by CBP in California because they were counterfeit (the "seized goods"). From this distinction, Defendants argue that the April 25, 2017 letter only threatened litigation for the *seized* goods, and Plaintiffs' Complaint only relates to the *sold* goods. Accordingly, there was never a threat of litigation for the sold goods, and no case or controversy under the Act. Alternatively, Defendants also argue that if this Court does have jurisdiction, it should decline to exercise such jurisdiction under the Act due to forum shopping and bad faith.

7

After initially arguing in its Response to the Motion to Dismiss that "Coach fabricate[d] a false distinction between Seized Goods and Sold Goods," Plaintiffs moved to amend the Complaint. (ECF No. 19 at 6.) Plaintiffs assert that the Amended Complaint does not add any new causes of action, but rather "simply clarifies the scope of the declaration." (ECF No. 22-1 at 4.) Specifically, the Amended Complaint no longer refers to merely "Subject Handbags." Rather, it refers to "Subject Goods," which Plaintiffs define as "including both those goods seized by CBP and those goods that Citi Trends received and subsequently sold." (Am. Compl., ECF No. 22-2 at ¶ 36.) Further, Plaintiffs assert in the Amended Complaint that there is a case or controversy because the April 25, 2017 letter referenced both seized *and* sold goods. Defendants assert that this Court should deny the Motion to Amend both because (1) it was filed after undue delay and in bad faith given that Plaintiffs "knew about the Seized Goods and Coach's concerns about them a full two months prior to filing their original Complaint," and (2) the amendments are futile because this Court should still decline to exercise jurisdiction under the Declaratory Judgment Act. (ECF No. 24.)

"'Leave to amend should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face.'" *Tawwaab v. Virginia Linen Service, Inc.*, 729 F.Supp.2d 757, 770 (D. Md. 2010) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986)). An amendment is insufficient or frivolous if it would not survive a motion to dismiss. *Id.* (citing *Perkins v. United States*, 55 F.3d 910, 916 (4th Cir. 1995)). As explained below, this Court will not be exercising its discretionary jurisdiction under the Declaratory Judgment Act. Because the analysis of whether to exercise jurisdiction is the

8

same under the Original Complaint or the Amended Complaint, and accordingly this Court would also not exercise jurisdiction under the Amended Complaint, the amendment is futile. Therefore, Plaintiffs' Motion to Amend (ECF No. 22) is DENIED.

## II. Motion to Dismiss

Coach raises two grounds in support of its Motion to Dismiss the Complaint. First, Coach argues that there is not an actual case of controversy necessary for this Court to exercise jurisdiction under the Declaratory Judgment Act. Second, Coach alternatively argues that even if this Court does have jurisdiction, it should decline to hear this case. As explained below, without assessing whether there was a sufficient threat of litigation to meet the controversy requirement, this Court declines to exercise jurisdiction under the Act.

"It has long been settled that a federal court has a measure of discretion to decline to entertain a declaratory judgment action that is otherwise properly within its jurisdiction." *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F.Supp.2d 330 (D. Md. 2011) (citing *Pub. Affairs Assoc., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580 (1962); *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173 (1942)). While the discretion is not absolute, a court may decline to exercise jurisdiction "for 'good reason.'" *Id.* (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.3d 321, 324 (4th Cir. 1937)). A court should consider four factors when deciding whether to grant declaratory relief: "(1) whether the judgment 'will serve a useful purpose in clarifying the legal relations in issue;' (2) whether the judgment 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding;' (3) considerations of federalism, efficiency, and comity; and (4) 'whether the declaratory judgment action is being used merely as a device for procedural fencing-that is, to provide

another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.'" *Hogs & Heroes Found. Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 498 (D. Md. 2016) (quoting *Aetna Cas.*, 139 F.3d at 422-23).

With respect to the first and second factors, the parties' arguments continue to revolve around whether the Defendants' April 25, 2017 letter and draft complaint applied to *both* the sold and seized goods—or only the seized goods, and whether the Plaintiffs' Original Complaint applies to *both* the sold and seized goods—or only the sold goods. While the letter clearly referenced the seized goods, it also stated "[t]hese claims apply not only to the counterfeit handbags and wallets that were seized by CBP, but also to additional counterfeit handbags and wallets that escaped detection and seizure by CBP." (ECF No. 1-1 at 1, 2.) Plaintiffs use this language to argue that it therefore threatened litigation for both the sold and seized goods. However, the complaint Defendants attached and subsequently filed in the United States District Court for the Central District of California only describes handbags that were seized by CBP on August 24, 2015 and September 22, 2015. (*Id.* at 3-28.) One of the last factual assertions in the California complaint is "[u]pon information and belief, Citi Trends conspired with the Vendor to import the shipments *referenced in the First and Second Notices of Seizure* . . . thereby intentionally and knowingly infringing Plaintiffs' valuable trademarks." (*Id.* at 19-20, ¶ 44) (emphasis added). Further, counsel for Defendants have now repeatedly stated in their briefs and also in declarations that there is not a controversy over the sold goods. (Mem., ECF No. 18-1 at 5, 25; Melican Decl., ECF No. 18-2 at ¶ 3; Watkins Decl., ECF No. 23-1 at ¶ 2.)

As to factor three, Defendants argue that the seized goods—the only goods involved in their suit against Plaintiffs—were seized in the Port of Long Beach, California. In addition, the individual who arranged for the importation of those goods, Jun Zhan, against whom Coach has also filed suit against in the United States District Court for the Central District of California,[5] arranged for the importation from his California offices. (ECF No. 18-1 at 21-22; Zhan Dep., ECF No. 18-7.) Accordingly, "[t]he conduct underlying, and the key witness to, the illegal importation of the Seized Goods are to be found in the Central District of California," and for comity and efficiency reasons, this Court should allow the California court to hear the claim. (ECF No. 18-1 at 27.) Plaintiffs argue that Defendants are ignoring the "first-to-file rule." (ECF No. 19 at 11.)

In this context, "the first-to-file rule 'gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction.'" *Neuralstem, Inc. v. StemCells, Inc.*, 573 F.Supp.2d 888, 900 (D. Md. 2008) (quoting *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n. 2 (4th Cir. 1974)). However, this Court has explained that this rule "yields to the interests of justice, and will not be applied when a court finds compelling circumstances supporting its abrogation." *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F.Supp.2d 330 (D. Md. 2011) (citing *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990)). This Court has specifically noted that "[o]ther circumstances under which an exception to the first-to-file rule exists include 'bad faith, anticipatory suit, and forum shopping.'" *Neuralstem, Inc. v. StemCells, Inc.*, 573 F.Supp.2d 888, 901 (D. Md. 2008) (quoting *Alltrade, Inc. v. Uniweld*

---

[5] *See Coach, Inc., et al. v. Jun Zhan, et al.*, Case No. 2:16-cv-05462-JFW-AFM.

*Products, Inc.*, 946 F.2d 622, 622 (9th Cir. 1991)). As explained below, the facts of this case require that the first-to-file rule yield to the interests of justice.

The "forum shopping" to which this Court referred in *Neuralstem, Inc. v. StemCells, Inc.* relates to the fourth factor when determining whether to exercise jurisdiction under the Declaratory Judgment Act. That factor specifically is "'whether the declaratory judgment action is being used merely as a device for procedural fencing-that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.'" *Hogs & Heroes Found. Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 498 (D. Md. 2016) (quoting *Aetna Cas.*, 139 F.3d at 422-23). Defendants argue that this Court should decline to hear this case because the Plaintiffs' Maryland suit is a "preemptive, anticipatory suit, filed in a secret race to the courthouse" and "a blatant attempt to forum shop and thus deprive Coach of its choice of forum." (ECF No. 18-1 at 27.) Specifically, Defendants emphasize that counsel sent Citi Trends notice of infringement in its April 25, 2017 letter. Subsequently, there was some exchange of documents in early to mid-May between counsel for Coach and counsel for Plaintiffs, who at that time was a partner in a California firm. (Watkins Decl., ECF No. 18-3 at ¶¶ 6-11.) After the exchange was allegedly fruitless, counsel for Coach communicated a monetary demand to Plaintiffs' counsel. (Watkins Decl., ECF No. 18-3 at ¶¶ 6-10.) The demand also included a notice that if a settlement was not reached, Coach would be filing the California complaint on June 30, 2017. (*Id.* at ¶ 10.) After further communication, on June 26, 2017, a different, Maryland-based attorney for Plaintiffs telephoned Defendants' counsel. (*Id.* at ¶ 13.) The parties dispute whether the call related to settlement terms or the merits of the infringement claims. *Compare id.* at ¶¶ 14-15, *with*, ECF

12

No. 19 at 2-3. Regardless, on that same day, Defendants sent Plaintiffs an email stating that Citi Trends still had four more days to make a "substantive response" to the monetary demand, or Coach would file the California complaint. (ECF No. 18-3 at ¶ 15; ECF No. 19 at 3.) On June 27, 2017, one day after the email and three days before the June 30 deadline, Plaintiffs filed the instant suit.

In *LWRC Intern., LLC v. Mindlab Media, LLC*, 838 F.Supp.2d 330 (D. Md. 2011), this Court addressed forum shopping in the context of declining to exercise jurisdiction under the Declaratory Judgment Act:

> "In some cases, there may come a point after which the potential lawsuit that may otherwise have given rise to a proper declaratory judgment action has become so certain or imminent, that the declaratory judgment action is merely an improper act of forum shopping, or a race to the courthouse." *Learning Network, Inc. v. Discovery Commc'ns, Inc.,* 11 Fed. App'x. 297, 301 (4th Cir. 2001) (not reported). Courts look with especial disfavor on such preemptive strikes in cases that involve a threat of litigation followed by settlement talks. For example, in *Hanson PLC v. Metro—Goldwyn—Mayer, Inc.,* 932 F.Supp. 104 (S.D.N.Y.1996), the court found circumstances warranting departure from the first-to-file rule when (1) the plaintiff filed a declaratory judgment action in an attempt to preempt the filing of a lawsuit by the defendant, (2) the defendant in the declaratory judgment action had waited to file suit in reliance upon representations made by the plaintiffs lawyers, and (3) the two cases were filed only one business day apart. Procedural fencing of this kind counsels against exercising jurisdiction over a declaratory judgment action. *Learning Network,* 11 Fed. App'x. at 301 (citing *Myles Lumber Co. v. CNA Fin. Corp.,* 233 F.3d 821, 824 (4th Cir. 2000); *Centennial Life Ins. v. Poston,* 88 F.3d 255, 257 (4th Cir. 1996); *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 377 (4th Cir. 1994)).

838 F.Supp. at 338 (declining to exercise jurisdiction under the Declaratory Judgment Act after explaining that "guileful forum shopping must not be countenanced"); *see also First Nationwide Mortg. Corp. v. FISI Madison, LLC*, 219 F.Supp.2d 669, 673 (D. Md. 2002)

("[Declaratory judgment] actions are disfavored, however, when they are filed in anticipation of another lawsuit, in order to obtain a more favorable forum or procedural posture.").

This fourth factor weighs heavily in favor of Defendants' Motion to Dismiss. Jurisdiction under the Act for Plaintiffs' suit relies on Defendants' April 25, 2017 letter and draft complaint. These were sent to Plaintiffs in an effort to begin settlement negotiations, as evidenced by the fact that Defendants' counsel stated they would not file suit until June 30, 2017. Five days before the June 30 deadline, counsel for Plaintiffs indicated that she would not allow her clients to be "sitting ducks" in the California case. (ECF No. 18-3 at ¶ 4.) Three days before the June 30 deadline, Plaintiffs filed their Complaint. The history of the parties' dispute shows that Plaintiffs waited until Defendants' suit was "so certain or imminent," that filing suit in this Court was "an improper act of forum shopping." *Mindlab Media*, 838 F.Supp. at 330 (quoting *Learning Network*, 11 Fed. App'x. at 301).

Considering all four factors, this Court declines to exercise jurisdiction under the Declaratory Judgment Act. The events giving rise to Coach's suit in California for the seized goods, which instigated Plaintiffs' declaratory judgment claim, occurred in California. Although Plaintiffs filed the instant action first, the record shows that it was in an effort to forum shop and provide a ground to dismiss Coach's suit in California, as evidenced by Plaintiffs' pending motion to dismiss in that case. Accordingly, this Court finds "good reason" to decline to exercise jurisdiction under the Declaratory Judgment Act, and Defendants' Motion to Dismiss (ECF No. 18) is GRANTED. Therefore, Plaintiffs' claims are DISMISSED and Plaintiffs' Motion to Stay the Proceedings (ECF No. 27) is MOOT.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss for Lack of Jurisdiction (ECF No. 18) is GRANTED, Plaintiffs' Motion to Amend the Complaint (ECF No. 22) is DENIED, and Plaintiffs' Motion to Stay the Proceedings (ECF No. 27) is MOOT.

A separate Order follows.

Dated: February 6, 2018

_____/s/_____
Richard D. Bennett
United States District Judge